IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Katherine Devine, et al. | : | CIVIL ACTION |
| | : | NO. 20-02417 |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| Northeast Treatment | : | |
| Centers, Inc., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    October 14, 2021

## I.    Introduction

Plaintiffs are employees of Defendant Northeast Treatment
Centers, Inc (Defendant"). The parties disagree over the amount
of overtime pay due Plaintiffs under the Fair Labor Standards
Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA"). On,
November 5, 2020, pursuant to 29 U.S.C. § 216(b), this Court
conditionally certified this matter as a collective action on
behalf of all individuals, who, during any week since November
1, 2017, were employed by Defendant as Case Managers or
Aftercare Workers. Notices were sent to approximately two
hundred putative members of the collective action, with forty-
nine individuals opting into the collective action.

The parties have since settled the action. Before the Court
is a motion to approve the settlement agreement. The Court finds
that the settlement is fair and reasonable, as well as the

requested attorneys' fees and proposed service award. The Court additionally finds that the proposed settlement does not frustrate the purpose of employees' protections under the FLSA. For the following reasons, the proposed settlement will be approved.

## II. Background

Defendant is a nonprofit organization that provides services in coordination with Philadelphia's Department of Human Services ("DHS"). As part of Defendant's relationship with DHS, Defendant employs Case Managers which oversee the cases of children in foster care. Plaintiffs in this case were employed by Defendant as Case Managers. Between the period from May 22, 2017 and June 20, 2019, Defendant paid Plaintiffs an average salary of approximately $44,000 per year. During this time period, Plaintiffs were classified as overtime-exempt professionals under the FLSA and PMWA. On June 21, 2019, Defendant re-classified Plaintiffs as overtime eligible.

This suit concerns overtime pay the Plaintiffs are allegedly owed under the FLSA and PMWA for two distinct time periods. First, Plaintiffs contend that they are owed overtime for the period between May 22, 2017 and June 20, 2019 when they were allegedly misclassified as overtime exempt. Second, Plaintiffs allege that Defendants failed to pay Plaintiffs for

all overtime hours worked after Plaintiffs were re-classified as overtime eligible.

Plaintiffs submit this unopposed motion to approve a collective action settlement following a settlement conference with Magistrate Judge Wells. Forty-eight of the forty-nine Plaintiffs that have opted into this suit have signed settlement release forms.

## III. Legal Standard

FLSA claims may be compromised or settled with the approval of the Secretary of Labor or the district court. Howard v. Philadelphia House Auth., 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016). When the parties seek approval by the district court, settlement of FLSA claims should be approved if it settles a bona fide dispute, "the settlement is fair and reasonable for the employee(s)," and "the agreement furthers the FLSA's implementation in the workplace." Id. at 777 (footnote omitted).

## IV. Discussion

With respect to the settlement agreement, there is a bona fide dispute, the settlement is fair and reasonable, approving the settlement would not frustrate the purpose of the FLSA, and the proposed attorneys' fees and service awards are reasonable.

### A. Bona Fide Dispute

There is a bona fide dispute about whether Plaintiffs were entitled to overtime pay. The agreement involves a bona fide

dispute if there are factual issues "rather than 'legal issues such as the statute's coverage and applicability.'" Howard v. Philadelphia Hous. Auth., 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016) (citing Creed v. Benco Dental Supply Co., No. 12-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013).

The existence of a bona fide dispute requires "the dispute [to] fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016). Additionally, "the Settlement Agreement's recital coupled with Defendant's continued denial of Plaintiff's allegations are sufficient evidence of a bona fide dispute." Howard, 197 F. Supp. 3d at 778.

Here, there is a dispute about whether Plaintiffs were entitled to overtime compensation between the period of May 22, 2017 and June 20, 2019. There is additionally a dispute as to the amount of overtime compensation Plaintiffs were entitled to after June 2019. This is an issue of fact that is precisely the kind of dispute that qualifies as a bona fide dispute. Defendant has denied liability in its answer to Plaintiffs' complaint and throughout the proceedings. There is also a denial of liability clause in the proposed settlement agreement. This constitutes further evidence of Defendant's rejection of Plaintiffs' claims

and is sufficient to find that there is a bona fide dispute. See
Solkoff v. Pennsylvania State Univ., 435 F. Supp. 3d 646, 654
(E.D. Pa. 2020) (finding denials and legal challenges as
evidence of a bona fide dispute).

### B.   Fair and Reasonable

Based on the factors described below, the settlement
is fair and reasonable.

#### 1.   Fairness of Settlement Amount

"This Court has recognized that some of the factors used to
evaluate the fairness of class action settlements are
appropriate to use to evaluate the fairness of FLSA
settlements." Solkoff, 435 F. Supp. 3d at 654 (citing Howard,
197 F. Supp. 3d at 777 n.1). "Namely, the cost-benefit analysis
of settling versus proceeding to trial and the existence of an
arm's-length negotiation are appropriate considerations in the
FLSA settlement context." Id. (citing Howard, 197 F. Supp. 3d at
778).

In instances where the "gross amount of the settlement is
not apportioned among the various FLSA and non-FLSA claims, the
Court will consider whether the gross amount satisfies the FLSA
claim only." Id. at 655; see id. (noting that the Court "is
required to approve only the part of the settlement agreement
that implicates the FLSA claims") (citing Kraus, 155 F. Supp. 3d
at 525–26). As previously noted by this Court, "the relevant

settlement amount is the total amount of the settlement even though the total settlement amount includes attorneys' fees" and "[i]n considering the adequacy of the FLSA claim settlement, this Court and other courts have used the total amount of the settlement to evaluate its fairness." Id. Thus, "the Court's role is to ensure that the gross amount of the settlement is at least adequate to compensate the claimant for the FLSA violation and not that it is fair and reasonable as to the non-FLSA claims asserted by the plaintiff." Id.

In determining whether an FLSA collective action is fair and reasonable, courts in the Third Circuit apply the factors laid out in Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975), which are used to evaluate the fairness of Rule 23 class action settlements. See Altnor v. Preferred Freezer Services, Inc., 197 F. Supp. 3d 746, 764 (E.D. Pa. 2016) (applying the Girsh factors to an FLSA collective action settlement). The relevant Girsh factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

<u>Girsh</u>, 521 F.2d at 157 (ellipses omitted).

The first factor weighs in favor of approval. As Plaintiffs explain in their motion, "absent settlement, this litigation would entail a series of complex litigation events, including, but not limited to, resolving Defendant's anticipated decertification and summary judgment motions and, if summary judgment were denied, pretrial motions addressing the proper scope of "representative" evidence and an extensive trial." Pls.' Br. in Support of Settlement at 13, ECF No. 46-3. Thus, the complexity and potential expense of this case weighs in favor of the Court approving the proposed agreement.

The second factor "attempts to gauge whether members of the class support settlement." <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 318 (3d Cir. 1998). This weighs in favor of approval as forty-eight of the forty-nine Plaintiffs that have opted into this suit have signed settlement release forms.

The third factor "requires the Court to consider the stage of the proceedings and the amount of discovery completed." <u>Altnor</u>, 197 F. Supp. at 761. Here, the parties have already completed substantial written discovery including over 7,000 pages of documents. On May 6, 2021, the Court referred the matter to Magistrate Judge Wells for a settlement conference. Prior to the settlement conference with Judge Wells, Plaintiffs'

counsel interviewed the majority of the forty-nine Plaintiffs to obtain information about their job responsibilities and work hours. Additionally, Plaintiffs' counsel examined the relevant timekeeping and payroll data at issue in this case. Thus, the Court can conclude that "the parties had an 'adequate appreciation of the merits of the case before negotiating.'" Id. at 762 (citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 3d 768, 813 (3d Cir. 1995)).

The fourth and fifth factors consider the risks of establishing liability and proving damages. Plaintiffs argue that litigation would pose a significant risk to Plaintiffs because they may not ultimately recover. At this point, it would be premature for the Court to weigh the risk of litigation as no dispositive motions have been filed in this case. See id. (explaining that "the risks of establishing liability and damages in this case are not readily apparent" because "[n]o dispositive motions, which might uncover any significant hurdles to establishing liability or damages, have been filed."). Thus, these factors remain neutral.

With respect to the sixth factor, the risk of maintaining the collective group through trial, Plaintiffs agree that at this point, the risk of maintaining this action through trial is not high. Thus, this factor, while not very significant in this case, weighs against approving the action.

8

The seventh factor contemplates "the ability of the defendants to withstand a greater judgment." Girsh, 521 F.2d at 157. This factor remains neutral because the "parties do not allege that Defendant has any degree of financial instability as a justification for the settlement's amount." Altnor, 197 F. Supp. at 762.

The eighth and ninth factors require the court to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." Id. (internal citation and quotation marks omitted). The factors must consider "reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 538 (3d Cir. 2004). Specifically, the court must consider whether the Plaintiff is getting a "good value" in the agreement. Id. "In order to assess the reasonableness of a settlement in cases seeking primarily monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" Id. (citing Prudential, 148 F.3d at 322).

### a. Reasonableness of the Settlement Fund

Plaintiffs maintain that the they are getting an excellent value in the settlement. The settlement seeks to distribute

payment to the forty-nine Plaintiffs based on the number of weeks they worked as Case Managers. The total settlement pool is $340,000. In total, Plaintiffs collectively worked 3,733 weeks. After excluding $10,000 in proposed service awards, which are discussed further below, Plaintiffs will recover $91.08 per week. This figure includes attorneys' fees as "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorneys' fees." Solkoff, 435 F. Supp. at 655. Because Plaintiffs worked an average of 76.18 weeks (3,733 weeks divided by 49 Plaintiffs), the average settlement payment is approximately $6,938.47 (76.18 weeks multiplied by $91.08).[1]

To calculate this figure, Plaintiffs apply the fluctuating workweek period to calculate the overtime allegedly due from the period between May 22, 2017 and June 20, 2019. Though Section 207 of the FLSA requires payment of over time "at a rate not less than one and one-half times the regular rate," the "half-time" or "fluctuating workweek method [] provides an alternative for calculating overtime premiums when certain conditions are met." Adeva v. Intertek USA, Inc., No. 09-1096, 2010 WL 97991, at *2 (D.N.J. Jan. 11, 2010) (citing 29 U.S.C. § 207(a)).

---

[1]     The settlement payments range from $473 to $13,054.

Under the fluctuating workweek method, the amount of overtime an employee owes depends on their "half-time rate." This is calculated by considering half of the employee's "hourly rate." For example, if an employee's annual salary is $44,000, their weekly salary would be $846 ($44,000 divided by 52 weeks). If an employee works 50 hours a week, their hourly rate would be $16.92 ($846 divided by 50 hours). The half-time rate would be $8.46 ($16.92 divided by 2). Thus, ten overtime hours would generate overtime pay equal to $84.60 ($8.46 multiplied by ten). According to Plaintiffs, an individual would need to work over 10 overtime hours per week to earn a $91.08/week payout under the settlement. Plaintiffs maintain that this is an excellent settlement payout for Plaintiffs.

The appropriateness of the fluctuating workweek method is subject to some dispute. For support of this approach, Plaintiffs cite to a 1942 Supreme Court case, Overnight Motor Transp. Co. v. Missel, 316 U.S. 572 (1942) (superseded by statute on other grounds). In Missel, the Court explained that in the absence of an agreement specifying that the employees were to be paid an hourly rate, the rate for employees working hours that fluctuate each week is the weekly wage rate divided by the number of hours the employees worked in that week. See Missel, 316 U.S. at 580-81 n. 16; accord Seymour v. PPG Indus., Inc., 891 F. Supp. 2d 721, 735 (W.D. Pa. 2012).

11

Courts have interpreted this differently. Some courts have viewed "it as an indication that the employee has already received 'straight time' for the hours worked over forty" such that the "employee is only entitled to the [half rate] on top of the straight time payment he already received." Seymour, 891 F. Supp. 2d at 735. "Other courts have concluded that employers must pay damages equal to one and one-half times the regular rate derived from the salary in addition to the entire salary already paid to the employee." Id.

Further, when determining the suitability of the fluctuating workweek method, some courts outside the Third Circuit have applied 29 C.F.R. § 778.114(a), which provides that the fluctuating workweek method applies only when an employee is on a fixed salary regardless of the amount of hours worked per week, among other requirements. See, e.g., Clements v. Serco, Inc., 530 F.3d 1224, 1230-31 (10th Cir. 2008); Valerio v. Putnam Associates, Inc., 173 F.3d 35, 39-40 (1st Cir. 1999).[2]

---

[2]     The requirements include:

    (1) The employee works hours that fluctuate from week to week;

    (2) The employee receives a fixed salary that does not vary with the number of hours worked in the workweek, whether few or many;

    (3) The amount of the employee's fixed salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours the employee works is greatest;

The Fourth, Fifth, and Seventh Circuits have chosen not to apply section 778.114(a). Instead, they have applied Missel's logic to find that the fluctuating workweek method may be applied to misclassification cases. Black v. SettlePou P.C., 732 F.3d 492, 498 (5th Cir. 2013); Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 681-82 (7th Cir. 2010); Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 356-69 (4th Cir. 2011).

The Third Circuit has yet to rule on this issue. However, courts in this Circuit have chosen not to apply section

---

(4) The employee and the employer have a clear and mutual understanding that the fixed salary is compensation (apart from overtime premiums and any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind not excludable from the regular rate under section 7(e)(l) through (8) of the Act) for the total hours worked each workweek regardless of the number of hours, although the clear and mutual understanding does not need to extend to the specific method used to calculate overtime pay; and

(5) The employee receives overtime compensation, in addition to such fixed salary and any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind, for all overtime hours worked at a rate of not less than one-half the employee's regular rate of pay for that workweek. Since the salary is fixed, the regular rate of the employee will vary from week to week and is determined by dividing the amount of the salary and any non-excludable additional pay received each workweek by the number of hours worked in the workweek. Payment for overtime hours at not less than one-half such rate satisfies the overtime pay requirement because such hours have already been compensated at the straight time rate by payment of the fixed salary and non-excludable additional pay. Payment of any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind is compatible with the fluctuating workweek method of overtime payment, and such payments must be included in the calculation of the regular rate unless excludable under section 7(e)(1) through (8) of the Act.

29 C.F.R. § 778.114(a).

778.114(a), finding that "the best approach is not to conflate the fluctuating workweek regulation with the damages calculation" because "the fluctuating workweek regulation itself *neither authorizes nor prohibits* the use of the half-time method in assessing damages in an FLSA misclassification case." Seymour, 891 F. Supp. 2d at 733 (emphasis in original); see also Depalma v. Scotts Co., LLC, No. 13-7740, 2019 WL 2417706, *12-*13 (D.N.J. June 10, 2019) (finding section 778.114(a) does not apply).

Ultimately, the "employee's regular rate of pay is a *factual* issue, which requires a threshold determination whether the salary was intended to compensate for a fixed number of hours, or alternatively for all hours worked." Seymour, 891 F. Supp. 2d at 733 (internal citation and quotation marks omitted) (emphasis in original). Thus, if the employee's "salary was for a fixed number of hours, the employees are entitled to time-and-a-half for overtime work," but "if the salary was for all time worked, the employees are only entitled to the half-time [rate], because they already received payment for straight time on their overtime hours." Id.; see also Depalma, 2019 WL 2417706, at *13 (finding the fluctuating workweek "applies only if the parties had a mutual understanding that the fixed weekly salary was compensation for all hours worked each workweek and the salary provided compensation at a rate not less than the

14

minimum wage for every hour worked.") (internal citation and quotation marks omitted).

Accordingly, the appropriateness of the half-time method depends on whether the Plaintiffs understood that their salary compensated them for all time worked. Here, the Court finds that Plaintiffs understood that they were to receive a salary for all time worked during the period between May 22, 2017 and June 20, 2019. Thus, it is appropriate for the Court to accept the fluctuating workweek method as a reasonable method under the circumstances.[3]

Finally, with respect to Plaintiffs' allegation that Defendant failed to pay them all overtime hours worked following June 21, 2019, because Plaintiffs were paid an hourly rate during this time period, Defendant applied a time-and-a-half theory required by section 207(a) of the FLSA. 29 U.S.C. §

---

[3]    The Court recognizes that the fluctuating workweek method does not apply to PMWA claims. In Chevalier v. General Nutrition Centers, Inc., the Pennsylvania Supreme Court declined to apply Missel held when reviewing the statutory construction of the PMWA that the statute's silence regarding the "intent to reject the 0.5 Multiplier of the [fluctuation workweek] Method in favor of the 1.5 Multiplier." 220 A.2d 1038, 1059 (Pa. 2019). However, as previously noted by this Court, "[w]hen, as here, the gross amount of the settlement is not apportioned among the various FLSA and non-FLSA claims, the Court will consider whether the gross amount satisfies the FLSA claim only" and so "the Court is required to approve only the part of the settlement agreement that implicates the FLSA claims." Solkoff, 435 F. Supp. 3d at 655. The parties here do not parse out the settlement amount due for the Plaintiffs' FLSA and PMWA claim. Thus, the Court may consider whether the gross amount is reasonable as the FLSA only and need not evaluate the settlement based on the PMWA claim.
       Regardless, Plaintiffs have calculated that even if they applied time-and-a-half as required by Chevalier, the settlement payments for Plaintiffs would equate to $90.08 per week which is equal to 3.5 hours of overtime per week. Plaintiffs maintain that this is an excellent recovery for Plaintiff.

207(a). The time-and-a-half theory is appropriate here. Plaintiffs explain that "[b]ecause Plaintiffs employed during this period earned around $21/hour, they would need to work 2.9 overtime hours to earn the $91.08/week payout delivered by the settlement." Pls.' Br. in Support of Settlement at 7, ECF No. 46-3. The Court agrees that this calculation is reasonable and thus appropriate.

Again, the settlement provides that Plaintiffs will earn a $91.08/week payout under the settlement. This amount assumes that Plaintiffs worked overtime each week. Overall, given the potential risks involved if the litigation were to go forward, the Court finds that the settlement value is reasonable. Thus, the eighth and ninth <u>Girsh</u> factors support the settlement.

Because the Girsh factors, on balance, support settlement, the Court finds that the amount of the settlement is fair and reasonable.

### 2.  Attorneys' Fees

As part of its analysis, the Court must consider whether the attorneys' fees are reasonable. The agreement provides for $87,500 in attorneys' fees and costs to be paid of the $340,000 settlement fund. Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Percentage of recovery is the

16

prevailing method used by courts in the Third Circuit for wage and hour cases." Sokloff, 435 F.3d at 658 (citing Keller v. TD Bank, No. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014)). This method "awards a fixed portion of the settlement fund to counsel." Id. (citing McGee v. Ann's Choice, Inc., No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014)).

Plaintiffs' counsel here requests a fee award of $87,500, which is 24.72% of the proposed total settlement amount of $340,000. When evaluating the appropriateness of an attorneys' fee award under the percentage-of-recovery method, the Court considers the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000).

First, the size of the fund created here, of $340,000, is substantial in light of the obstacles to recovery discussed above, indicating a favorable outcome for Plaintiff. Second, forty-eight of the forty-nine Plaintiffs have agreed to the settlement so far. Third, as Plaintiffs were able to come to an

17

agreement within 16 months, this indicates efficiency.
Additionally, Plaintiffs' counsel has experience litigating FLSA
claims.

Fourth, this litigation has been ongoing since May 2020 and
involves contested legal issues requiring significant analysis.
Fifth, although there was not a risk of nonpayment because
Defendant is solvent, Plaintiffs' counsel works on a contingency
basis making non-payment a risk. Sixth, according to Plaintiffs'
counsel, they devoted more than 141 hours to this matter.
Seventh, the attorneys' fees are approximately 25.73% of the
total settlement amount of $340,000. This is within the typical
range of FLSA collective action settlements, which, in this
Circuit, are generally between 20% and 45% of the common fund.
Galt v. Eagleville Hosp., 310 F. Supp. 3d 483, 498 (E.D. Pa.
2018); Altnor, 197 F. Supp. at 766.

These factors overwhelmingly point toward an approval of
this award. Finally, although it is not dispositive, the
requested amount is less than the lodestar cross-check amount.
See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306-07 (3d
Cir.2005) (describing the lodestar method and noting that it may
be used as a "cross-check" for the percentage-of-recovery
method). Thus, the requested attorneys' fees will be approved.

### C.    Frustration of FLSA

Approving the settlement agreement would not frustrate the purpose of the FLSA. The purpose of the FLSA was to provide a remedy for the consequences resulting from "the unequal bargaining power as between employer and employee." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). Specifically, the FLSA sought "to secure for the lowest paid segment of the nation's workers a subsistence wage." Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 525 (E.D. Pa. 2016) (quoting D.A. Schulte v. Gangi, 328 U.S. 108, 114 (1946)). Considering this policy, courts have rejected general releases and confidentiality clauses in FLSA settlement agreements. See id. at 532-33 (rejecting a general release); Solkoff, 435 F. Supp. 3d at 658-660 (rejecting a confidentiality clause). In this case, however, the proposed confidentiality and settlement agreements are limited enough such that they do not frustrate the FLSA's purpose.

### 1.    Confidentiality Clause

Confidentiality clauses are deemed to "frustrate the purpose of the FLSA by facilitating information asymmetry that hinders FLSA enforcement. The defendant's employees, as well as the public at large, have an interest in ensuring fair wages and thus an interest in information about the defendant's settlement of claims alleging a failure to provide fair wages." Solkoff,

19

435 F. Supp. at 658. However, "in certain cases, the purpose of the FLSA may not be frustrated by a confidentiality clause that does not create information asymmetry between the defendant and his employees, namely by allowing the plaintiff to discuss the case and settlement with other employees." Id. Here the confidentiality provision provides:

> Originating Plaintiffs and Plaintiffs' Counsel will not make any statements or issue any press release to the media or press addressing the Settlement or the negotiation of this Settlement and will not contact any media representatives. If contacted by media representatives, Originating Plaintiffs and Plaintiffs' Counsel may state that the Parties amicably resolved the dispute and may direct the media representative to the public record.

Proposed Settlement Agreement at ¶ 9, ECF No 56-1.

The confidentiality provision only prevents the parties form speaking to the media, not other employees. Courts in prior cases have found that such confidentiality orders are appropriate. McGee v. Ann's Choice, Inc., No. 12-12554, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (approving an FLSA settlement agreement with a confidentiality clause that was "narrowly drawn to prohibit only statements to the media" and left the plaintiff "free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media."). Thus, the confidentiality clause would not frustrate the purposes of the FLSA and is sufficiently narrow to allow approval.

20

2.   **Release of Claims**

Generally, broad release of claims is disfavored as they "subvert the goal of remedying the consequences of unequal bargaining power." Solkoff, 435 F. Supp. at 660. Typically, "broad release of claims that includes unrelated claims and claims unknown to the plaintiff frustrates the purpose of the FLSA by allowing employers to use their superior bargaining power to disadvantage FLSA claimants." Id. at 659-660. In this case, the release provides:

> Upon passage of the Approval Date and in consideration of Defendant's fulfillment of its payment obligations which may be fulfilled through NET Treatment Services, Inc. d/b/a NET Community Care, each Plaintiff (on behalf of himself/herself and his/her heirs, spouses, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable claims (including, but not limited to, claims for the reimbursement of liquidated damages, interest, penalties, attorney's fees and litigation costs and expenses) arising prior to the Approval Date and either asserted in or reasonably related to the Action, including but not limited to all such claims for unpaid regular or overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law theory.

Proposed Settlement Agreement at ¶ 4, ECF No 56-1

The Plaintiffs contend, and the Defendants agree, that the release is limited to claims to the action. This is not the type of provision that releases all claims that "related or

unrelated, known or unknown" that would allow "the employer to extract from the plaintiff[s] a benefit beyond what [they are] compensated for in exchange for payment of the fair wages" owed. Solkoff, 435 F. Supp. at 660. Thus, this is not an overbroad release that would frustrate the purpose of the FLSA.

    **D.   Approval of the Service Awards is Warranted**

    The settlement agreement provides that the originating Plaintiffs, Katherine Devine and Lavar Turner, will each receive a $5,000 service award which will be paid out of the settlement fund. Service awards generally function to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." Sullivan v. DB Investments, Inc., 667 F.3d 273, 333 n.65 (3d Cir. 2011) (quotations omitted). The Court must carefully scrutinize proposed service awards so they do not turn into an improper method of lawyers compensating the lead plaintiffs for referring the case.

    Service awards are within the discretion of the Court to approve. Hall v. Accolade, Inc., No. 17-3423, 2020 WL 1477688, at *10 (E.D. Pa. March 25, 2020). To determine whether a service award is appropriate, courts typically consider factors including:

The risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiffs personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.

Id. (citing In re Plastic Tableware Antitrust Litig., No. 94-3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995)).

Here, Devine and Turner brought the case to counsel without an agreement or the expectation of receiving compensation outside of membership in the collective action. As originators of the action, Devine and Turner faced potential reputational harm from Defendant and future employers. See, e.g., Alvarez v. BI Inc., No. 16-2705, 2020 WL 1694294, at *7 (E.D. Pa. Apr. 6, 2020) (finding the named plaintiffs "took significant risk[s] by coming forward to represent the interests of their fellow employees" by "risk[ing] not only their reputation in the community, but also in their field. . . ."). As representatives of the collective action, Devine and Turner have been advocates for their coworkers, have been in regular contact with counsel, and attended the settlement conference and discussed the case with Magistrate Judge Wells.

Finally, the requested service award is a reasonable percentage of the settlement fund. This service award accounts for less than three percent of the total settlement fund.

Courts in this district have approved service awards in this general range. See, e.g., Travis v. Asociacion Puertorriguenos en Marcha, Inc., No. 18-05015, 2020 WL 4059715, *3 (E.D. Pa. July 20, 2020) (approving a service award of approximately 3% of the settlement fund); Alvarez, 2020 WL 1694294, at *2, *7 (approving a service award of approximately 3.75% of the settlement fund); Young v. Tri County Sec. Agency Inc., No. 13-5971, 2014 WL 1806881, at *1, *8 (E.D. Pa. May 7, 2014) (approving a settlement award of over 3.5% of the settlement fund). Thus, the service award is appropriate.

## V.    Conclusion

The Court finds that there is a bona fide dispute, the settlement agreement is fair and reasonable, and that the settlement would not frustrate the purposes of the FLSA. It also finds that the requested attorneys' fees and proposed service award are reasonable. For the foregoing reasons, the settlement agreement is approved.

An appropriate order follows.

24